(No. 79056.—

(No. 79057.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. HILARION GRANADOS, Appellee.

*Opinion filed May 23, 1996.*

James Ryan, Attorney General, of Springfield, and Gary L. Spencer, State's Attorney, of Morrison (Norbert J. Goetten, John X. Breslin and Robert M. Hansen, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Thomas A. Karalis, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The issue in these consolidated appeals is whether the circuit court was authorized to impose extended-term sentences on the defendant, Hilarion Granados, for each of his four felony convictions. In each of two cases, the defendant pled guilty to one count of driving under the influence of alcohol and one count of driving while license revoked. The circuit court of Whiteside County found the defendant subject to an extended-term sentence of six years' imprisonment for each conviction.

The defendant appealed in both cases. The appellate court held that the defendant was not subject to extended-term sentences and reduced the defendant's sentences accordingly. Nos. 3—93—0198, 3—93—0884 (unpublished orders under Supreme Court Rule 23). We accepted the State's petition for leave to appeal in each case (155 Ill. 2d R. 315), and consolidated them. We now reverse the judgment of the appellate court and affirm the sentences imposed upon the defendant by the circuit court in both cases.

## FACTS

In case No. 79057, the defendant was charged by information on June 15, 1992, with one count of driving under the influence of alcohol (DUI) and one count of driving while license revoked (DWLR). Each offense was alleged to have occurred on June 12, 1992. The DUI offense was charged as a Class 4 felony based on the defendant's prior DUI convictions. The DWLR offense was also charged as a Class 4 felony based on the defendant's prior DWLR convictions. On September 1, 1992, the defendant pled guilty to each count in open court and was admonished that he could receive extended-term sentences of three to six years' imprisonment. On October 16, 1992, the defendant was sentenced on each count to an extended term of six years' imprisonment.

The defendant filed a *pro se* notice of appeal to the appellate court on January 20, 1993. The appellate court dismissed that appeal. Thereafter, the defendant filed a petition for post-conviction relief in which he charged that his trial counsel was ineffective for failing to "file an appeal" for him. The trial court denied the petition. The defendant appealed to the appellate court, third district, arguing that his counsel was ineffective because he was not subject to extended-term sentences. The appellate court agreed and reduced the defendant's sen-

tences to the maximum nonextended term of three years' imprisonment. No. 3—93—0884 (unpublished order under Supreme Court Rule 23).

In case No. 79056, the defendant was charged by information on September 25, 1992, with one count of DUI and one count of DWLR, each offense alleged to have occurred on September 17, 1992. Each offense was charged as a Class 4 felony based upon the defendant's prior convictions. On November 25, 1992, the defendant pled guilty to each count in open court, and was admonished that he could receive extended-term sentences of three to six years' imprisonment. On January 15, 1993, the defendant was sentenced on each count to an extended term of six years' imprisonment. These sentences were ordered to run consecutively to those imposed in case No. 79057.

The defendant filed motions to withdraw his guilty pleas and for a reduction of his sentences. The trial court denied these motions. The defendant appealed to the appellate court, third district, on the ground that he was not subject to extended-term sentences. The appellate court agreed and reduced the defendant's sentences to the maximum nonextended term of three years' imprisonment. No. 3—93—0198 (unpublished order under Supreme Court Rule 23).

The third district of the appellate court applied the same reasoning in reducing the defendant's sentences in each appeal. The appellate court determined that the defendant's sentencing was governed by the third district's decision in *People v. Spearman*, 108 Ill. App. 3d 237 (1982), because the defendant's crimes were committed within the third district of the appellate court in June and September of 1992, and *Spearman* was the controlling precedent in that district at that time. *Spearman* held that the extended-term sentencing statute was not applicable to felonies that had been enhanced

from misdemeanors by the defendant's prior convictions. The appellate court noted that it had expressly overruled *Spearman* in *People v. Martin*, 240 Ill. App. 3d 260 (1992), a decision announced in December of 1992. The opinion in *Martin*, however, stated that it was limited to prospective application only because it had overruled the third district's prior precedent, *Spearman*. Therefore, the appellate court found that *Martin* did not apply to the defendant's sentencing because the defendant's crimes occurred before *Martin* was announced. The appellate court further found that to apply *Martin* retroactively to the defendant would violate due process as the equivalent of an *ex post facto* law. The appellate court noted that this court's recent decision in *People v. Hicks*, 164 Ill. 2d 218 (1995), had decided that the extended-term statute applied to felonies enhanced from misdemeanors. *Hicks* was therefore in accordance with *Martin* and contrary to *Spearman*. The appellate court determined, however, that *Hicks* could not be retroactively applied to the defendant.

## ANALYSIS

As noted, in each of these cases, the defendant pled guilty to the offenses of driving under the influence of alcohol (625 ILCS 5/11—501(a), (d)(1) (West 1992)) and driving while license revoked (625 ILCS 5/6—303 (West 1992)). Each of these offenses is classified as a Class A misdemeanor. 625 ILCS 5/11—501(c), 6—303(a) (West 1992). The Illinois Vehicle Code provides, however, that DUI is enhanced to a Class 4 felony when the defendant has previously been convicted of that same offense two or more times. 625 ILCS 5/11—501(d)(1) (West 1992). Likewise, DWLR is treated as a Class 4 felony when the defendant has previously been convicted of that offense and the original revocation or suspension was the result of a violation of the DUI statute. 625 ILCS 5/6—303(d) (West 1992). At the time the defendant committed his

offenses, he had at least three prior DUI convictions and eight prior DWLR convictions. There is no dispute that each of the defendant's offenses in the instant cases was properly charged as a Class 4 felony based upon his prior convictions.

The defendant was found subject to an extended-term sentence for each of the instant convictions pursuant to section 5—5—3.2(b)(1) of our Unified Code of Corrections. 730 ILCS 5/5—5—3.2(b)(1) (West 1992). Pursuant to that section, an extended-term sentence may be imposed when a defendant:

> "is convicted of any felony, after having been previously convicted *** of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts." 730 ILCS 5/5—5—3.2(b)(1) (West 1992).

The extended-term sentence permissible for a Class 4 felony is a term of imprisonment not less than three years and not more than six years. 730 ILCS 5/5—8—2(a)(6) (West 1992).

The defendant does not dispute that his past criminal convictions satisfied the requirements of section 5—5—3.2(b)(1). Nevertheless, the defendant contends he was not subject to extended-term sentencing under that provision. The defendant's sole basis for this contention is that his instant Class 4 felony convictions for DUI and DWLR do not amount to felonies within the meaning of that section. The defendant argues that the phrase "any felony" in section 5—5—3.2(b)(1) does not encompass a misdemeanor that has been enhanced to a felony by reason of prior convictions.

The defendant's contention was recently rejected by this court in *People v. Hicks*, 164 Ill. 2d 218 (1995). In *Hicks*, this court was asked to resolve a conflict among the decisions of our appellate court with respect to

whether a trial court may impose an extended-term sentence for a felony conviction where that felony was enhanced from a misdemeanor because of the defendant's past criminal convictions. This court in *Hicks* rejected the defendant's contention that the phrase "any felony" in the extended-term sentencing provision was ambiguous and should be construed to exclude such enhanced misdemeanors. Rather, we found, the plain language of the provision explicitly states that it applies to "any felony" and makes no exception for misdemeanors that have been enhanced to felonies in accordance with the legislature's direction. The words "any felony," we concluded, are broad in scope and apply to a misdemeanor that has been enhanced to a felony by reason of prior criminal convictions. *Hicks*, 164 Ill. 2d at 223. This court's holding in *Hicks* thus defeats the defendant's argument that the phrase "any felony" in section 5—5—3.2(b)(1) does not encompass his felony convictions in the instant cases.

The defendant contends that *Hicks* should not apply to him because his offenses occurred before *Hicks* was announced by this court. As a general rule, however, this court's decisions apply to all cases that are pending when the decision is announced, unless this court directs otherwise. See *Lannom v. Kosco*, 158 Ill. 2d 535, 538 (1994); *People v. Stack*, 112 Ill. 2d 301, 309 (1986); *People v. Phillips*, 219 Ill. App. 3d 877, 879 (1991). But *cf. Griffith v. Kentucky*, 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987); *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989) (discussing rules of retroactivity where a judicial decision announces a new constitutional rule of criminal procedure that is favorable to the defendant). We did not direct that our decision in *Hicks* be applied prospectively only. To the contrary, we applied our interpretation of section 5—5—3.2(b)(1) to uphold the extended-term sentence imposed

on Hicks, who committed his crime in February of 1992. The defendant's cases were pending in the appellate court at the time this court announced its decision in *Hicks*. *Hicks* therefore applies and defeats the defendant's claim.

The defendant argues, however, that the application of *Hicks* to his cases would violate the prohibition on *ex post facto* laws because *Hicks* constituted a change from the law which had been expressed at the time of his crimes. The defendant contends that the controlling law at the time of his offenses was the rule stated in a decision of the third district of our appellate court, *People v. Spearman*, 108 Ill. App. 3d 237 (1982). In *Spearman*, the defendant had been sentenced to an extended term of five years' imprisonment for stealing less than $15 worth of meat from a supermarket. The appellate court in that case held, citing "the interest of lenity," that an extended-term sentence was improperly imposed because section 5—5—3.2(b)(1) did not authorize the imposition of an extended-term sentence for a misdemeanor that has been enhanced to a felony because of prior convictions. *Spearman*, 108 Ill. App. 3d at 240.

The defendant acknowledges that *Spearman* was expressly overruled by the third district of the appellate court in a decision filed in December of 1992, *People v. Martin*, 240 Ill. App. 3d 260 (1992). *Martin* interpreted section 5—5—3.2(b)(1) in the same manner this court did in *Hicks*. The defendant also acknowledges that *Spearman* is no longer valid after this court's decision in *Hicks*. The defendant nonetheless contends that his sentencing in the instant cases must be governed by *Spearman* because his offenses occurred within the third district of the appellate court in June and September of 1992 and *Spearman* was "controlling" in the third district at that time. The defendant argues that, because the rule of *Spearman* constituted the law in the third

district at the time he committed his offenses, it would be violative of the prohibition on *ex post facto* laws to apply the "change" in the law wrought by *Martin* and *Hicks* retroactively to him.

Article I of the United States Constitution provides that neither Congress nor any state shall pass any "ex post facto Law." See U.S. Const., art. I, § 9, cl. 3; art. I, § 10, cl. 1. Encompassed within this prohibited class of laws is, *inter alia*, a law that " 'changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.' " (Emphasis omitted.) *Collins v. Youngblood*, 497 U.S. 37, 42, 111 L. Ed. 2d 30, 38, 110 S. Ct. 2715, 2719 (1990), quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648, 650 (1798). The purpose of this constitutional prohibition is to ensure that legislative enactments "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28-29, 67 L. Ed. 2d 17, 23, 101 S. Ct. 960, 964 (1981).

While the language of the *ex post facto* clause speaks to legislative enactments and does not on its face apply to judicial action, it has been held that the prohibition applies to judicial interpretations of statutory law. *Marks v. United States*, 430 U.S. 188, 191-92, 51 L. Ed. 2d 260, 265, 97 S. Ct. 990, 992-93 (1977); *Bouie v. Columbia*, 378 U.S. 347, 352-54, 12 L. Ed. 2d 894, 899-900, 84 S. Ct. 1697, 1701-03 (1964); *People v. Ramey*, 152 Ill. 2d 41, 63 (1992). In *Bouie*, the Supreme Court noted that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *Bouie*, 378 U.S. at 353, 12 L. Ed. 2d at 899, 84 S. Ct. at 1702. The *Bouie* Court held that, if a state legislature is barred from passing an *ex post facto* law, then a state supreme court must be barred by the due

process clause from achieving the same result by judicial construction. Accordingly, under *Bouie*, if a judicial construction of a criminal statute is " 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' " it must not be applied retroactively. *Bouie*, 378 U.S. at 354, 12 L. Ed. 2d at 900, 84 S. Ct. at 1703, quoting J. Hall, General Principles of Criminal Law 61 (2d ed. 1960); see also *Ramey*, 152 Ill. 2d at 64.

We find that applying section 5—5—3.2(b)(1) as interpreted in *Hicks* and *Martin* to the defendant does not violate due process. *Bouie* prohibited the retroactive application of a judicial construction of a criminal statute only where it effects an unforeseeable change in the law. The interpretation given to section 5—5—3.2(b)(1) in *Hicks* and *Martin* did not constitute an unforeseeable change in the law under *Bouie*.

Section 5—5—3.2(b)(1) was enacted prior to the defendant's conduct in these cases. Our decision in *Hicks* did not enlarge the meaning of the statute, but merely interpreted the plain meaning of the statute's unambiguous language to reach the conclusion that it encompassed felonies that were enhanced from misdemeanors by prior criminal conduct. A judicial decision which merely interprets a criminal statute in accordance with its plain language does not operate as an *ex post facto* law. *People v. Coleman*, 168 Ill. 2d 509, 551 (1995); *People v. Dugan*, 109 Ill. 2d 8, 16 (1985). This is true even where the statute had not previously been interpreted in that manner. *Coleman*, 168 Ill. 2d at 550-51; *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 295 (1988); *Dugan*, 109 Ill. 2d at 16. Thus, under the plain language of section 5—5—3.2(b)(1), the defendant was afforded fair warning at the time of his offenses that he could be subject to extended-term sentences for those crimes.

Neither did *Hicks*, or *Martin*, constitute an unfore-

seeable change in the law with reference to the judicial pronouncements on this issue at the time of the defendant's offenses. In June and September of 1992, when the defendant committed these crimes, this court had not yet considered the issue of whether section 5—5—3.2(b)(1) applied to felonies that were enhanced from misdemeanors. Thus, *Hicks* did not overrule any prior precedent of this court in reaching its holding. The appellate court pronouncements on the issue were inconsistent. *Spearman*, upon which the defendant relies, held that section 5—5—3.2(b)(1) did not apply to felonies that were enhanced from misdemeanors. Some other appellate court decisions had interpreted section 5—5—3.2(b)(1) in the same manner as *Spearman*. See, *e.g.*, *People v. Hurd*, 190 Ill. App. 3d 800 (1989); *People v. Nally*, 134 Ill. App. 3d 865 (1985). As of June and September of 1992, however, other appellate court decisions had rejected *Spearman*. See, *e.g.*, *People v. Crosby*, 204 Ill. App. 3d 548 (1990); *People v. Roby*, 172 Ill. App. 3d 1060 (1988). For example, in the 1988 decision in *Roby*, the appellate court expressly disagreed with *Spearman*'s interpretation of section 5—5—3.2(b)(1) and held that an extended-term sentence was properly imposed for a misdemeanor DWLR conviction that had been enhanced to a felony because of a prior conviction. *Roby*, 172 Ill. App. 3d at 1063-66.

Thus, at the time of the defendant's criminal conduct, the decisions of the appellate court were conflicting, this court had not spoken on the issue, and the plain language of the statute encompassed the defendant's crimes. Under these circumstances, we do not find that our holding in *Hicks,* or the appellate court's holding in *Martin*, represented a construction of section 5—5—3.2(b)(1) that was " 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue.' " *Bouie*, 378

U.S. at 354, 12 L. Ed. 2d at 900, 84 S. Ct. at 1703, quoting J. Hall, General Principles of Criminal Law 61 (2d ed. 1960). We agree with the view espoused by the Seventh Circuit Court of Appeals, which stated, .in rejecting a similar argument:

> "That courts have rendered decisions later deemed erroneous by higher authority does not entitle criminal defendants to the benefit of those mistakes. [Citation.] *Bouie* applies only to unpredictable shifts in the law, not to the resolution of uncertainty that marks any evolving legal system." *United States v. Burnom*, 27 F.3d 283, 284-85 (7th Cir. 1994).

Accordingly, we find that *Bouie* does not apply here to prohibit the application of *Hicks* or *Martin* to the defendant. The defendant was afforded fair warning, at the time of his crimes, that the extended-term sentencing provision could apply if he should be convicted. Based upon the foregoing, there is no constitutional prohibition against applying section 5—5—3.2(b)(1) as interpreted in *Hicks* and *Martin* to the defendant. See *People v. Crete*, 113 Ill. 2d 156, 159-63 (1986); *Dugan*, 109 Ill. 2d at 16; *City of Chicago v. Hertz Commercial Leasing Corp.*, 71 Ill. 2d 333, 347-48 (1978); *Burnom*, 27 F.3d at 284-85; *Dale v. Haeberlin*, 878 F.2d 930, 932 (6th Cir. 1989).

This same conclusion was reached in *Crete*, where this court sought to interpret section 5—8—1(c) of our Unified Code of Corrections to determine whether that statute's time period for the reduction or modification of a sentence was permissive or mandatory. The defendant argued that the language was permissive and the statute should be interpreted to allow for a hearing on his motion to reduce his sentence. The *Crete* court noted that this court had not previously addressed the issue and that the opinions of the appellate court on the issue were conflicting. This court went on to conclude that the clear language of the statute required that it be

interpreted as mandatory, rather than permissive. This interpretation defeated the defendant's position, and the defendant argued that this interpretation should not be applied retroactively to his case. This court rejected that argument. Even though prior appellate court decisions had interpreted the statute in the manner urged by the defendant, this court found that its decision did not constitute a change in the law which warranted a prospective-only application. *Crete,* 113 Ill. 2d at 163.

The defendant continues to urge, however, that with regard to cases, such as his, arising within the third district of the appellate court, the holdings of *Hicks* and *Martin* did constitute an unforeseeable change in the law because *Spearman* was not contradicted by any other decision *of that district.* The defendant's contention must be rejected. There is only one Illinois Appellate Court (*People v. Layhew,* 139 Ill. 2d 476, 489 (1990)), and that court's pronouncements on the present issue were unsettled at the time of the defendant's crimes. Since our appellate court expressed conflicting views on the issue, the defendant had no basis for allegedly relying upon only one of those conflicting views and ignoring the other view. The fact that the defendant's cases arose within the third district is not controlling, because the only inquiry presented here is whether the defendant had fair warning, at the time of his crimes, that section 5—5—3.2(b)(1) could be interpreted to apply to his crimes. The plain meaning of the statute, and the fact that some appellate court decisions had interpreted the statute to cover such crimes, provided the defendant with the requisite fair warning.

Were we to accept the defendant's argument, our decision in *Hicks* would apply retroactively only to defendants whose cases arose in some districts, and not to those whose cases arose in other districts. The defen-

dant does not dispute that had his cases arisen in, for instance, the fourth district of the appellate court, there would be no due process impediment to the application of *Hicks.* The defendant thus, in effect, asks this court to unfairly discriminate between similarly situated defendants depending upon the district in which their cases arose. See *People v. Harris*, 123 Ill. 2d 113, 128 (1988) (refusing to apply an otherwise prospective-only supreme court decision retroactively to benefit defendants in only one appellate district because of prior precedent within that district). We reject the defendant's claim that the circumstance of his cases having arisen within the third district allows him to avoid the application of this court's otherwise-applicable precedent. See *People v. Phillips*, 219 Ill. App. 3d 877 (1991) (second district of the appellate court held that supreme court's interpretation of a criminal statute, announced during the pendency of the defendant's appeal, applied to the defendant even though the second district had previously adhered to the contrary interpretation).

As a final matter, the defendant notes that in *Martin,* the decision that overruled *Spearman*, the third district of the appellate court stated that it would not apply its decision retroactively because it overruled prior precedent. *Martin*, 240 Ill. App. 3d at 265. In the present case, both parties ask this court to consider whether the Illinois Appellate Court possesses the authority to limit the application of its decision to prospective application only. We find, however, that we need not decide in this case whether, or under what circumstances, our appellate court has the authority to limit the retroactive application of a decision. Regardless of whether an appellate court ever has the authority to limit the retroactive application of a decision, for the reasons stated in this opinion we find that the *Martin* court erred in limiting its decision to prospective application only.

In sum, we find that neither our decision in *Hicks* nor the appellate court's decision in *Martin* constituted the sort of unpredictable shift in the law with which *Bouie* was concerned, but both are more appropriately described as the "resolution of uncertainty that marks any evolving legal system." *Burnom*, 27 F.3d at 284-85. Application of section 5—5—3.2(b)(1), as interpreted in *Hicks* and *Martin*, to the defendant is therefore not prohibited.

## CONCLUSION

For the foregoing reasons, we hold that the defendant was properly found subject to extended-term sentences in these cases. The judgment of the appellate court in each case is therefore reversed, and the judgment of the circuit court in each case is affirmed.

*No. 79056—Appellate court judgment reversed; circuit court judgment affirmed.*

*No. 79057—Appellate court judgment reversed; circuit court judgment affirmed.*